OPINION
This appeal is taken from a final judgment of the Juvenile Division of the Portage County Court of Common Pleas. Appellant, Timothy Ranker, appeals from the juvenile court's judgment terminating his parental rights and granting permanent custody of his minor daughter, Listi Anne Ranker ("Listi") to appellee, Portage County Department of Human Services ("DHS").
The following procedural history is relevant to this appeal. Appellant, Listi's natural father, and Melissa Potts ("Ms. Potts"), Listi's natural mother, are the parents of the child. Listi was born on June 30, 1997 and has been in the custody of DHS since the day after she was born. DHS intervened when it received a referral that the parents were having problems with Listi, and that she was born with a low apgar score, which assesses the health and medical condition of a newborn infant. Listi has remained in foster care since she was released from the hospital, and has a thriving relationship with her foster parents.
On March 3, 1999, DHS filed a motion pursuant to R.C. 2151.413 seeking permanent custody of Listi. On that same day, Jeffrey Myers was appointed guardian ad litem on behalf of the child. A permanent custody hearing was held on May 5, 1999 regarding the motion. At the permanent custody hearing, DHS presented two witnesses: (1) Barbara Niepsuj, ("Ms. Niepsuj") a placement worker for DHS, who develops case plans to help the parents resolve their problems and work toward reunification; and (2) Patsy Giulitto, ("Ms. Giulitto") an investigator with the Portage County Department of Human Services Child Support Enforcement Agency.[1] Ms. Potts presented one witness on cross-examination, Penny Ray, who was a placement supervisor with DHS for this case. The juvenile court also received a written report from the guardian ad litem which recommended that DHS's motion for permanent custody be granted.
The juvenile court heard testimony from these witnesses and received into evidence various DHS exhibits and one exhibit from Ms. Potts. Although appellant and Ms. Potts were present with counsel in court during the permanent custody hearing, neither one testified on their own behalf.
At the end of the hearing, the juvenile court granted the motion for permanent custody. Thereafter, on June 30, 1999, the juvenile court issued its judgment entry finding, by clear and convincing evidence, that it was in the best interest of the child to grant permanent custody to DHS for purposes of adoption, which would result in appellant and Ms. Potts being divested of all parental rights.
It is against this judgement granting permanent custody of his daughter to DHS that appellant asserts a single assignment of error for our consideration:
 "The trial court erred in placing Listi Anne Ranker in the permanent custody of DHS."
 With respect to his single assignment of error, appellant has presented two separate issues for our view. First, in general, appellant maintains that the child could have received permanent placement without the grant of permanent custody to DHS. Before we may address the substance of appellant's sole assignment of error, it is necessary to review the applicable law governing a motion for permanent custody.
R.C. 2151.414(B) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. In reFrary (Dec. 17, 1999), Geauga App. No. 98-G-2132, unreported, at 4, 1999 WL 1313623. The statute permits the juvenile court to grant permanent custody of the child to the human service agency if the court determines, by clear and convincing evidence, that: (1) it is in the best interest of the child to grant permanent custody to the agency; and (2) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. As appellant in this case challenges the "best interest" prong outlined in R.C. 2151.414(B), we will limit our analysis to that issue.
"Clear and convincing evidence" is more than a mere preponderance of the evidence. Rather, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361,368. Once the clear and convincing standard has been met to the satisfaction of the juvenile court, a reviewing court "must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof." Holcomb at 368. An appellate court will not overturn the juvenile court's decision to terminate parental rights and award permanent custody to an agency unless the judgment is unsupported by clear and convincing evidence. Id. See, also, Frary at 4.
Now we turn to the case at bar and appellant's assertion that it was not in the child's best interest to grant permanent custody to DHS. Although Ms. Niepsuj testified that DHS had the names of other possible relatives for placement purposes, none of these relatives, according to appellant, were contacted regarding the custody of the child. Appellant posits that it would have been in the child's best interest to attempt to place her with a relative before placing her up for adoption.
In determining the best interest of the child, R.C. 2151.414(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.[2]
This court has held on several occasions that the provisions of R.C.2151.414(D) are mandatory and "must be scrupulously observed." In theMatter of Hommes (Dec. 6, 1996), Ashtabula App. No. 96-A-0017, unreported, at 4, 1996 Ohio App. LEXIS 5515. See, also, In the Matter ofEthington (July 23, 1999), Trumbull App. No. 98-T-0084, unreported, at 3, 1999 WL 562714; In the Matter of Alexander (Dec. 19, 1997), Trumbull App. No. 96-T-5510, unreported, at 6-7, 1997 Ohio App. LEXIS 5742. Thus, the failure to discuss each of the factors set forth in R.C. 2151.414(D) when reaching a determination concerning the best interest of the child is prejudicial error. There must be some indication on the record that the trial court considered all four factors found in R.C. 2151.414(D) when reaching its judgment. Moreover, no factor is solely dispositive of the issue, and each needs to be given proper consideration. Ethington at 9;Alexander at 7; Hommes at 6.
The juvenile court's judgment entry reveals that the court considered in detail all the enumerated factors in R.C. 2151.414(D). Regarding the interaction of Listi with her foster parents, testimony was presented that Listi has been in the same foster home since she was released from the hospital. Listi is doing well in their care, and she has shown a strong bond with the foster parents as they are the only parents the child knows.
Also, the foster parents are interested in adopting the child as well. In the event that Listi was placed in an adoptive home and that adoptive home would not be the foster parents, Ms. Niepsuj testified that the child would be able to assimilate in another home because she has shown an ability to bond. Finally, the foster parents have expressed a willingness to assist Listi in such a situation.
As for Listi's relationship with her father, appellant seemingly had a lack of interest in supporting his daughter, or maintaining any communication or an ongoing relationship with her. By the time the permanent custody hearing on May 5, 1999, appellant had not come to DHS to continue visitation with his daughter since September 2, 1998. In other words, there has been a complete discontinuation of visitation and communication by appellant with his daughter. The juvenile court describes appellant and Ms. Potts' actions accurately:
 "* * * [T]he parents made themselves strangers with their own child and * * * the Portage County Department of Human Service's suggests that there is no bonding with either of these parents due to the fact that the parents have not seen their child for seven (7) months."
 Furthermore, Ms. Giulitto, an investigator for the Portage County Department of Human Services Child Support Enforcement Agency, testified that both parents have child support obligations. Specifically, each parent was ordered to pay $50.00 a month plus poundage. Nevertheless, appellant has not made any child support payments.
The juvenile court also considered the contact that other members of appellant and Ms. Potts' family had with the child, including the maternal great grandmother, maternal grandmother, maternal uncle and paternal aunt.
Insofar as the wishes of the child are concerned, Listi is not sufficiently mature to express her desire. However, her guardian adlitem determined that Listi's best interest would be served by a grant of permanent custody to DHS for the purpose of adoption so that the child may be placed in a legally secure environment as soon as possible.
As to Listi's custodial history, the juvenile court recognized that Listi was taken into custody of DHS the day after her birth and has been in a foster home since the day she was released from the hospital. It was also noted that the child has a thriving relationship with her foster parents.
Regarding Listi's need for a legally secure permanent placement, both the guardian ad litem and Ms. Niepsuj stated that Listi is in need of a legally secure permanent placement, and that there is no other way to achieve that type of placement without a grant of permanent custody to DHS. At the permanent custody hearing, Ms. Niepsuj indicated that a number of relatives had been approached in the summer of 1997 about being a relative placement for Listi. Ms. Niepsuj testified that Listi had seen her maternal great grandmother twice and her maternal grandmother twice even though they were told they could call and schedule a visit with the child. Neither the maternal great grandmother nor the maternal grandmother expressed an interest in taking Listi. The maternal uncle visited with Listi on two occasions but withdrew his interest in taking the child. DHS has not contacted these relatives recently to determine whether they would reconsider providing Listi's with a home.
In an effort to locate another alternative relative placement, appellant and Ms. Potts suggested Diane Belknap ("Ms. Belknap"), the paternal aunt, to DHS. Ms. Belknap, who resides in Tennessee and is appellant's sister, visited the child on numerous occasions. Since Ms. Belknap was a resident of another state, Ms. Niepsuj requested that the State of Tennessee complete an interstate compact placement request form and conduct a home study on Ms. Belknap. Ms. Niepsuj also indicated that there may have been some bond between Ms. Belknap and Listi. However, the results of the interstate contact with the State of Tennessee revealed that the state's agency did not recommend Ms. Belknap as a suitable relative placement for Listi. Based on this information, Ms. Niepsuj testified that DHS filed its motion for permanent custody, and Ms. Belknap was no longer considered as a potential relative placement for Listi. As the juvenile court noted:
 "* * * [T]he family has had twenty-two (22) months for somebody in this family to come forward and inform the Court or the Portage County Department of Human Services that they are capable of taking this child; they can care for this child; can keep this child safely in their home; and, there will be no disruption with this placement. The Court finds that no family member has come forward requesting to take this child."
 Moreover, the interstate compact placement request, which is codified in Ohio at R.C. 5103.20 states the following in Article III, section D:
 "The child shall not be sent, brought, or cause * * * to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." (Footnote omitted.)
 Thus, placing the child with Ms. Belknap was not a viable option in this matter because the interstate compact could not be entered into since the Tennessee Department of Children's Services refused to approve placement of the child with Ms. Belknap. Accordingly, there was clear and convincing evidence underlying the juvenile court's determination that it was in the child's best interest that permanent custody be granted to DHS.
Further, appellant presents a second issue for our consideration under his single assignment of error. Here, appellant maintains that the child could have remained with the foster family while DHS took the time to consider other relatives for placement. Thus, it seems that appellant is suggesting that long-term foster care should have been considered by the juvenile court as an alternative.
We initially recognize that within the juvenile court's judgment entry, there is no indication that the court considered long-term foster care as an alternative. This may be due to the fact that appellant failed to make a formal request for the court to consider long-term foster care. In the absence of a formal motion by appellant, we see no error in the juvenile court failing to consider long-term foster care as an alternative to granting permanent custody to DHS. In the Matter of Efaw
(Apr. 21, 1998), Athens App No. 97CA49, unreported, at 6, 1998 WL 224905 (holding that the trial court did not err in failing to consider long-term foster care as an alternative to granting permanent custody in the absence of a formal motion by appellant to consider long-term foster care).
Even if appellant made a formal request for the court to consider long-term foster care, such an option finds no support in the record. R.C. 2151.353 states in pertinent part:[3]
 "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
"* * *
 "(5) Place the child in long term foster care * * * if a public children services agency or a private child placing agency requests the court to place the children in long term foster care and if the court finds, by clear and convincing evidence, that long term foster care is in the best interest of the childand that one of the following exists:
 "(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care;
 "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child * * * and the child retains a significant and positive relationship with a parent or relative;
 "(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living." (Emphasis added.)
 The record reveals that there was no such request by DHS, and, consequently, the juvenile court was under no obligation to order long-term foster care as an alternative. In the Matter of Duff (Aug. 10, 1994), Licking App. No. 93 CA 131, unreported, at 2, 1994 WL 478012.
Further, there was no evidence that Listi fit into any of the situations enumerated in (a) through (c). There was no evidence that Listi was "unable to function in a family-like setting and must remain in residential or institutional care" because of "physical, mental, or psychological problems or needs[.]" At the time of permanent custody hearing, she was living in a foster family and was developmentally on target. The child has not retained a significant and positive relationship with appellant or any relative, and adoption is in her best interest. Finally, Listi is below the age of sixteen. Thus, based upon the clear dictates of R.C. 2151.353, long-term foster care was not a viable option in this case.
Upon review, we determine that there was clear and convincing evidence to support the juvenile court's decision that it was in the best interest of the child to grant permanent custody to DHS. There was evidence in the record which demonstrated that the child would be better served by the grant of permanent custody to DHS for the purpose of adoptive placement. Such evidence included appellant's seeming lack of interest in maintaining communication or an ongoing relationship with his child, the child's need for stability and permanency, and the progress made by the child while in the care of her respective foster parents. Further, no suitable relative has come forward to take placement of Listi, and, there is the possibility that Listi could be adopted by the foster parents as they have expressed an interest in adopting the child. Even if Listi was placed in an adoptive home other than that of the foster parents, Ms. Niepsuj stated that the child would be able to assimilate in another home because she has shown an ability to bond. Finally, the foster parents have expressed a willingness to assist Listi in such a situation.
Accordingly, appellant's single assignment of error is meritless. Based on the foregoing analysis, the judgment of the juvenile court is affirmed.
 ________________________________________ PRESIDING JUDGE JUDITH A. CHRISTLEY
NADER, J., O'NEILL, J., concur.
[1] Ms. Niepsuj was the case worker for Listi and her parents since July 1997.
[2] We will examine the versions of R.C. 2151.414(D) in effect at the time the motion for permanent custody was filed on March 3, 1999. We note that the statute was amended effective March 18, 1999.
[3] We will examine the versions of R.C. 2151.353 in effect at the time the motion for permanent custody was filed on March 3, 1999. We note that the statute was amended effective March 18, 1999.